**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

Pamela Gillie, et al.,

                Plaintiffs,

    v.

Law Office of Eric A. Jones, LLC, et al.,

                Defendants.

Case No. 2:13-cv-212

Judge Graham

Magistrate Judge Deavers

## OPINION AND ORDER

This matter is before the Court on the parties' Cross-Motions for Summary Judgment (docs. 47–51, 70). The Plaintiffs commenced the instant action against certain attorneys and their law offices that the Ohio Attorney General (OAG) has appointed to act as special counsel to collect debts owed to the State of Ohio. The Plaintiffs are Ohio residents who received at least one debt-collection letter written on the OAG's official letterhead from the Defendants. The Plaintiffs allege that the Defendants' use of the OAG's letterhead in their collections communications violates the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq*, and seek to represent a class of similarly situated consumers. For the following reasons, the Court: GRANTS the Defendants' Motions for Summary Judgment (docs. 47 & 51); DENIES the Plaintiffs' Motions for Summary Judgment (docs. 48–50); DENIES the OAG's Motion for Judgment on the Pleadings (doc. 46) and Motion for Summary Judgment (doc. 70); and DENIES AS MOOT the Plaintiff's Motion to Dismiss for Failure to State a Claim (doc. 41).


## I.      Background

The Attorney General is Ohio's chief law enforcement officer. O.R.C. § 109.02. Pursuant to Ohio law, the OAG is charged with collecting debts owed to state entities. O.R.C. § 131.02.

To assist him with his collection efforts, the OAG "may appoint special counsel to represent the state in connection with all claims of whatsoever nature which are certified to the attorney general for collection under any law or which the attorney general is authorized to collect." O.R.C. § 109.08. Once appointed, special counsel execute standardized contracts with the OAG. OAG Counterclaim at ¶ 11, doc. 5. These contracts require, *inter alia*, special counsel to use official OAG letterhead for all collection activities. Id. at ¶¶ 8, 22.

In 2012, the OAG appointed Defendants Eric Jones and Mark Sheriff as special counsel to assist in the collection of debts pursuant to O.R.C. § 109.08. Defendant Jones operated the Law Office of Eric A. Jones, L.L.C. Defendant Mark Sheriff worked as a partner at Wiles, Boyle, Burkholder & Bringardner (the Wiles Law Firm). Defendant Sarah Sheriff worked in the collections department of the Wiles Law Firm. Ms. Sheriff was not appointed special counsel but assisted Mr. Sheriff in his collection efforts on behalf of the OAG.

In the spring of 2012, Plaintif Pamela Gillie received a letter from Defendant Eric Jones of The Law Office of Eric A. Jones, LLC. Def. Jones's Letter, doc. 48-2. The OAG's letterhead appeared at the top of the letter. Id. It included the official state seal, the Attorney General's name, and the Attorney General's title. Id. The letter stated, "Dear Sir/Madam, You have chosen to ignore repeated attempts to resolving [sic] the referenced . . . medical claim. If you cannot make immediate full payment call Denise Hall at Eric. A Jones, L.L.C., . . . at my office to make arrangements to pay this debt." Id. The letter further explained that it was a communication from a debt collector and that the letter was an attempt to collect a debt. Id. In the signature block, Defendant Jones signed his name, noted that he was "Outside Counsel for the Attorney General's Office," and provided contact information at which he could be reached. Id. The letter further

2

instructed Gillie to send payment to the Law Office of Eric A. Jones, L.L.C., and provided means of paying the debt discussed in the body of the letter. Id.

Later that summer, Plaintiff Hazel Meadows received a letter from Defendant Sarah Sheriff of the Wiles Law Firm. Def. Sheriff's Letter, doc. 48-4. The OAG's letterhead appeared at the top of the letter. Id. It included the official state seal next to the heading "Office of the Ohio Attorney General, Collections Enforcement Section." Id. The letter stated, "Sir/Madam: Per your request, this is a letter with the current balance owed for your University of Akron loan that has been placed with the Ohio Attorney General. Feel free to contact me . . . should you have any further questions." Id. Defendant Sarah Sheriff signed the letter, included the name and address of her law firm, and noted that she was "Special Counsel to the Attorney General for the State of Ohio." Id.

On March 5, 2013, the Plaintiffs filed a five-count Complaint (doc. 1) against the Defendants, alleging multiple violations of the FDCPA, 15 U.S.C. § 1692 *et seq.* The Plaintiffs assert that the Defendants' use of the OAG's letterhead was false, deceptive, or misleading. Specifically, the Plaintiffs allege that the Defendants:

(1)     falsely represented or implied that they are vouched for, bonded by, or affiliated with the State of Ohio in violation of 15 U.S.C. § 1692e(1);

(2)     used written communications which falsely represented to be a document authorized, issued or approved by the State of Ohio, or created a false impression that the OAG was the source of the letters, authorized the letters, or approved the letters in violation of 15 U.S.C. § 1692e(9);

(3)     used false representation or deceptive means to collect or attempt to collect debts from the Plaintiffs in violation of 15 U.S.C. § 1692e(10); and

(4)     used OAG letterhead in violation of 15 U.S.C. § 1692e(14)'s requirement
        that debt collectors use the "true name" of their business or company.[1]

Compl. at 15–19, doc. 1.

Shortly after the filing of the Complaint in this case, the Ohio Attorney General filed a Motion to Intervene as Defendant and Counterclaimant (doc. 3). In his counterclaim, the OAG requests a declaratory judgment stating that special counsel's use of OAG letterhead is not a violation of the FDCPA and that the OAG and State of Ohio are immune from liability under the FDCPA. OAG's Answer at 22, doc. 5. The Court subsequently granted the OAG's Motion to Intervene.

After granting the OAG's Motion, the Court stayed discovery and requested additional briefing on the issue of bifurcating this case. In late 2013, the Court issued a written Opinion and Order (doc. 42) bifurcating the issues of liability and damages and directing the parties to file dispositive motions within 60 days of the Court's Order. The Plaintiffs filed a Motion to Dismiss the OAG's Declaratory Judgment Claims (doc. 41). The parties subsequently filed cross-motions for summary judgment (doc. 47–51, 70) regarding the Defendants' alleged liability for violations of the FDCPA.[2] The Court held an oral hearing on the parties' cross-motions for summary judgment on June 10, 2014. The matter is now fully briefed and ripe for resolution.

## II.     Standard of Review

---

[1] In the alternative to the fourth count of the Complaint, the Plaintiffs allege that the Law Firm Defendants, as opposed to the individual attorney defendants, used OAG letterhead in violation of 15 U.S.C. § 1692e(14)'s requirement that debt collectors use the "true name" of their business or company.

[2] The OAG filed a Motion for Judgment on the Pleadings (doc. 46) on its counterclaims, which the Court construed as a motion for summary judgment, see Order (doc. 69).

4

Under Federal Rule of Civil Procedure 56, summary judgment is proper if the evidentiary material in the record shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Longaberger Co. v. Kolt, 586 F.3d 459, 465 (6th Cir. 2009). The moving party bears the burden of proving the absence of genuine issues of material fact and its entitlement to judgment as a matter of law, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case on which it would bear the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986); Walton v. Ford Motor Co., 424 F.3d 481, 485 (6th Cir. 2005).

The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986); see also Longaberger, 586 F.3d at 465. "Only disputed material facts, those 'that might affect the outcome of the suit under the governing law,' will preclude summary judgment." Daugherty v. Sajar Plastics, Inc., 544 F.3d 696, 702 (6th Cir. 2008) (quoting Anderson, 477 U.S. at 248). Accordingly, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." Moore v. Philip Morris Cos., Inc., 8 F.3d 335, 340 (6th Cir. 1993).

A district court considering a motion for summary judgment may not weigh evidence or make credibility determinations. Daugherty, 544 F.3d at 702; Adams v. Metiva, 31 F.3d 375, 379 (6th Cir. 1994). Rather, in reviewing a motion for summary judgment, a court must determine whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at

251–52. The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Eastman Kodak Co. v. Image Technical Servs., Inc., 504 U.S. 451, 456 (1992). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson, 477 U.S. at 252; see Dominguez v. Corr. Med. Servs., 555 F.3d 543, 549 (6th Cir. 2009).

## III.     Cross-Motions for Summary Judgment

"The Fair Debt Collection Practices Act is an extraordinarily broad statute." Frey v. Gangwish, 970 F.2d 1516, 1521 (6th Cir. 1992). Its purpose is to "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). To that end, the Act prohibits debt collectors from making "false, deceptive, or misleading communications in connection with the collection of any debt." 15 U.S.C. § 1692e.

Here, the Plaintiffs maintain that the Defendants' use of the OAG letterhead was false, deceptive, or misleading in violation of § 1692e. In order to establish a claim under § 1692e: (1) the plaintiff must be a "consumer" as defined by the Act; (2) the "debt" must arise out of transactions which are "primarily for personal, family or household purposes"; (3) the defendant must be a "debt collector" as defined by the Act; and (4) the defendant must have violated § 1692e's prohibitions. Wallace v. Wash. Mut. Bank, F.A., 683 F.3d 323, 326 (6th Cir. 2012).

Here, the parties contest the third and fourth elements. The Court addresses each of these elements in turn.

A.    *Are special counsel "debt collectors" under the FDCPA?*

The FDCPA applies to entities who are considered "debt collectors." <u>Montgomery v. Huntington Bank</u>, 346 F.3d 693, 698 (6th Cir. 2003). The term "debt collector" is defined by the Act as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). However, the FDCPA specifically excludes "any officer or employee of the United States or any State to the extent that collecting or attempting to collect any debt is in the performance of his official duties" from the definition of "debt collector." 15 U.S.C. § 1692a(6)(C).

The Plaintiffs argue that § 1692a(6)(C)'s exception does not apply to special counsel because they are independent contractors, rather than government officers or employees. According to the Plaintiffs, special counsel executed Retention Agreements with the OAG that explicitly state that special counsel are independent contractors and not government employees or officers. To support their argument, the Plaintiffs cite numerous cases concluding that independent contractors are not covered by § 1692a(6)(C)'s exception.

In contrast, special counsel insist that they are appointed pursuant to statute and are therefore government officers or employees that fall within § 1692a(6)(C)'s exception. Consequently, they conclude that they are not debt collectors and therefore not subject to the FDCPA.

The case law addressing § 1692a(6)(C) is sparse. On the one hand, courts readily apply § 1692a(6)(C)'s exception to individuals that are clearly government officers or employees. See, e.g., Al-Sharif v. United States, 296 F. App'x 740, 742 (11th Cir. 2008) (applying § 1692a(6)(C)'s exception to IRS agents); Streater v. Cox, No. 07-11163, 2008 WL 564884, at *3 (E.D. Mich. Feb. 28, 2008) (applying § 1692a(6)(C)'s exception to Michigan Assistant Attorney Generals); Masterson v. Meade Cnty. Fiscal Court, et. al., 489 F. Supp. 2d 740, 757–58 (W.D. Ky. 2007) (applying § 1692a(6)(C)'s exception to county officials). On the other hand, courts generally do not apply § 1692a(6)(C)'s exception to private individuals and entities in a purely contractual relationship with the government. See, e.g., Pollice v. Nat'l Tax Funding, 225 F.3d 379, 406 (3d Cir. 2000) (holding that § 1692a(6)(C) applies only to state "officers" or "employees" and that it "does not extend to those who are merely in a contractual relationship with the government"); Brannan v. United Student Aid Funds, Inc., 94 F.3d 1260, 1263 (9th Cir. 1996) (§ 1692a(6)(C) "applies only to an individual government official or employee who collects debts as part of his government employment responsibilities. USA Funds is a private nonprofit organization with a government contract; it is not a government agency or employee."); Piper v. Portnoff Law Assoc., 274 F. Supp. 2d 681, 683 (E.D. Pa. 2003) (finding that law firm contractually bound to collect debts on behalf of municipality did not fall within FDCPA exception for government officers); Gradisher v. Check Enforcement Unit, Inc., 133 F. Supp. 2d 988, 992 (W.D. Mich. 2001) ("[A]n independent contractor is not entitled to an exemption to the FDCPA . . . [I]f the legislature had intended to allow independent contractors, rather than just government agencies and employees, to escape liability under the FDCPA, it could have explicitly stated as much.").

The facts of this case are distinct from the cases cited above. Here, special counsel are appointed pursuant to Ohio statute but are also in a contractual relationship with the OAG. To establish whether special counsel are "debt collectors" under the FDCPA, the Court must determine whether special counsel are an "officer or employee," 15 U.S.C. § 1692a(6)(C), of the State of Ohio.

"When presented with a matter of statutory interpretation, we begin with the language of the Act itself." Ashland Hosp. Corp. v. Serv. Emps. Intern. Union, Dist. 1199 WV/KY/OH, 708 F.3d 737, 741 (6th Cir. 2013) (collecting cases). "If the meaning of the Act's language is plain, we give it effect and our analysis comes to an end." Id. (citing United States v. Ron Pair Enters., 489 U.S. 235, 240–41 (1989)). The FDCPA does not define the terms "officer" or "employee". See 15 U.S.C. § 1692a(6). Therefore, the Court's analysis begins with the Dictionary Act, which provides rules for interpreting "any Act of Congress, unless the context indicates otherwise," 1 U.S.C. § 1. See Burwell v. Hobby Lobby Stores, Inc., 134 S. Ct. 2751, 2014 WL 2921709, at *14 (June 30, 2014) ("RFRA itself does not define the term 'person.' We therefore look to the Dictionary Act, which we must consult '[i]n determining the meaning of any Act of Congress, unless the context indicates otherwise.' 1 U.S.C. § 1."). The Dictionary Act defines the term "officer" as "any person authorized by law to perform the duties of the office." 1 U.S.C. § 1. Nothing in the FDCPA indicates that the Dictionary Act's definition of "officer" should not apply in the context of 15 U.S.C. § 1692a(6).

Here, one of the OAG's duties as chief law enforcement officer for the State of Ohio is the collecting of debts owed to state entities. O.R.C. § 131.02. To assist him with the duties of his office, the OAG appoints special counsel pursuant to statute "to represent the state in connection with all claims of whatsoever nature which are certified to the attorney general for

collection under any law or which the attorney general is authorized to collect." O.R.C. § 109.08. In other words, special counsel are authorized by law to perform the duties of the OAG with respect to the collection of debts owed to the State of Ohio. The Court therefore concludes that special counsel are "officers" within the meaning of the term as used in 15 U.S.C. § 1692a(6)(C) and, consequently, finds that special counsel are not "debt collectors" under the FDCPA.

The Plaintiffs place great weight on the Retention Agreements executed by special counsel and the OAG. The language of those agreements supports the proposition that special counsel are independent contractors. The Retention Agreement for special counsel provides:

> Special Counsel is being appointed hereunder to provide legal services on behalf of the Attorney General to one or more State Clients. Special counsel will render services to this Retention Agreement as an independent contractor. Special counsel, whether for purposes of applications of Ohio. R.C. Chapter 102, Section 8.86 or Section 9.87, or for any other purpose, shall not be regarded as "in the employment of", or as an employee of, the Attorney General or any State Client.

> During the term of this appointment, Special Counsel shall be engaged by the Attorney General solely on an independent contractor basis[.] . . .

Retention Agreement for Collections Special Counsel at 2, doc. 48-7. See also Fiscal Year 2013 Retention Agreement Collections Special Counsel at 2, doc. 48-8 (using almost identical language to describe special counsel as "independent contractors" and not state employees).

Even so, the Court is not persuaded that the language of the Retention Agreements should control the Court's interpretation of § 1692a(6)(C) as informed by the Dictionary Act's definition of "officer." The Plaintiffs' position would require the Court to ignore the fact that special counsel are appointed by the OAG pursuant to Ohio statute for the specific purpose of collecting debts owed to the State of Ohio. The Plaintiffs take an overly narrow view of special counsel's authority and fail to consider the significance of this authority given the meaning of the term "officer" as used in § 1692a(6)(C). The Court finds the Plaintiffs' arguments unpersuasive.

10

Finally, the Plaintiffs argue, a 1975 advisory opinion issued by the Ohio Ethics Commission of the Ohio Supreme Court clearly establishes that special counsel are nothing more than independent contractors. In its advisory opinion, the Commission considered whether special counsel appointed pursuant to O.R.C. § 109.08 were "elected or appointed to an office of or employed by" a state entity and, consequently, were prohibited from receiving compensation for services in any case or proceeding before other state entities pursuant to O.R.C. § 102.04(A). Ohio Eth. Com., 1975 WL 184266 (Aug. 19, 1975). Reviewing § 102.04(A), the Commission concluded that special counsel "are not within the purview of Section 102.04 of the Revised Code by virtue of being 'elected to an office' nor do they seem to be 'appointed to an office' of an instrumentality of the state." Id. at *1. The Commission then considered whether special counsel were employees of the OAG and found that special counsel were independent contractors not subject to § 102.04(A)'s restrictions. Id. at *2–*4.

The Court first notes that the opinion of a state ethics commission is not binding upon the federal courts. More significantly, the Commission's advisory opinion interpreted a provision of state law unrelated to the FDCPA, the federal statute at issue in this case. The Commission's advisory opinion may very well be correct as a matter of state law, but that is beside the point here. The definition of the term "officer" as used in § 1692a(6)(C) of the FDCPA sweeps broadly and includes "any person authorized by law to perform the duties of the office," 1 U.S.C. § 1. Because the Commission's advisory opinion does not address the statute and definition at issue in the present case, it does not alter the Court's conclusion that special counsel are not debt

11

collectors under the terms of the FDCPA. Special counsel are therefore entitled to summary judgment as a matter of law.[3]

B.     *Did the Defendants Violate the FDCPA?*

Assuming *arguendo* that the Defendants are debt collectors under the FDCPA, the Court considers whether the Defendants violated the FDCPA. The Plaintiffs allege that the Defendants violated four subsections of 15 U.S.C. § 1692e: 1692e(1), 1692e(9), 1692e(10), and 1692e(14). Respectively these subsections prohibit:

> [t]he false representation or implication that the debt collector is vouched for, bonded by, or affiliated with . . . any State, 15 U.S.C. § 1692e(1);

> [t]he use or distribution of any written communication which simulates or is falsely represented to be a document authorized, issued, or approved by any . . . official . . . or agency of . . . any State, or which creates a false impression as to its source, authorization, or approval, id. at § 1692e(9);

> [t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer, id. at § 1692e(10); and

> [t]he use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization, id. at § 1692e(14).

---

[3] In an effort to avoid the time and expense of class-wide discovery, this Court previously stayed discovery in this case in its September 6, 2013 Order (doc. 28). After bifurcating the issues of liability and damages, the Court directed the parties to file dispositive motions as to the individual plaintiffs in this case. December 4, 2013 Order, doc. 42. The Plaintiffs did not file a motion for leave to conduct discovery and proceeded to submit motions for summary judgment. "A plaintiff pursuing a claim under the FDCPA bears the burden of establishing that the defendant is a debt collector within the meaning of the FDCPA." Passa v. City of Columbus, 748 F. Supp. 2d 804, 810 (S.D. Ohio 2010) (citing Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti, 374 F.3d 56, 60 (2nd Cir. 2004)). Here, the Plaintiffs offer no evidence that the Law Firm Defendants or Defendant Sarah Sheriff are debt collectors under the FDCPA. See Schroyer v. Frankel, 197 F.3d 1170, 1176 (6th Cir. 1999) (discussing type of evidence necessary to establish that a law firm is a "debt collector" under the FDCPA). In the interest of fairness, given the lack of discovery in this case, the Court resolves the issue of the Law Firm Defendants' and Defendant Sarah Sheriff's liability on alternative grounds.

15 U.S.C. § 1692e. The Plaintiffs offer detailed arguments as to the violation of each of these subsections. The thrust of their arguments is that special counsel's use of the OAG letterhead violates the FDCPA because it misleads consumers as to the source of the debt collection letters and falsely implies that the letters are from the OAG instead of special counsel and their law firms. In the Plaintiffs' view, special counsel's use of the OAG letterhead is meant to intimidate consumers and pressure them into paying special counsel, contrary to the purpose of the FDCPA.

To determine whether a communication is "false, deceptive or misleading," courts examine the communication under a "least sophisticated consumer" standard.[4] Wallace v. Wash. Mut. Bank, F.A., 683 F.3d 323, 326 (6th Cir. 2012). This is an objective standard. See Harvey v. Great Seneca Fin. Corp., 453 F.3d 324, 331 (6th Cir. 2006) ("courts apply an objective test based on the understanding of the least sophisticated consumer") (internal quotations omitted)). The least sophisticated consumer test is designed "to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd." Kistner v. Law Offices of Michael P. Margelefsky, LLC, 518 F.3d 433, 438 (6th Cir. 2008) (quotations and citation omitted). This standard "preserv[es] a quotient of reasonableness and presum[es] a basic level of understanding and willingness to read

---

[4] In their filings, the parties treat the question of whether the Defendants have violated 15 U.S.C. § 1692e as a question of law for the Court to decide. However, in the Sixth Circuit, courts submit close cases under § 1692e to a jury. See Kistner v. Law Offices of Michael P. Margelefsky, LLC, 518 F.3d 433, 440–41 (6th Cir. 2008). As one district court judge has helpfully explained:

> In applying the "least sophisticated consumer" standard, the Sixth Circuit has adopted the "more than one reasonable interpretation standard." Kistner, 518 F.3d at 441. Under that approach, a collection letter can be "deceptive" if it is open to "more than one reasonable interpretation, at least one of which is inaccurate." Id. (quoting Clomon v. Jackson, 988 F.2d 1314, 1319 (2d Cir. 1993)). "[T]he 'more than one reasonable interpretation' standard is applicable to the entirety of § 1692e as a useful tool in analyzing the least sophisticated consumer test." Id. Therefore, where a letter could be susceptible to more than one reasonable interpretation and one of these interpretations is inaccurate, there is a question of fact for the jury to decide. Id.

Samples v. Midland Credit Mgmt., Inc., No. 3:12–cv–00099, 2012 WL 2576392, at *7 (M.D. Tenn. July 2, 2012). Because the Court concludes that there is only one reasonable interpretation of the letters in question, the Court considers the question of whether the Defendants have violated 15 U.S.C. § 1692e as a question of law.

with care." Fed. Home Loan Mortg. Corp. v. Lamar, 503 F.3d 504, 510 (6th Cir. 2007) (citation omitted). See also Miller v. Javitch, Block & Rathbone, 561 F.3d 588, 595 (6th Cir. 2009) (citing Lamar, 503 F.3d at 510) (recognizing that the least sophisticated consumer standard assumes that the communication at issue "is read in its entirety, carefully, and with some elementary level of understanding").

Further, to establish a violation of § 1692e, a communication must be materially false or misleading, that is, the statement must be technically false, and one which would tend to mislead or confuse the reasonable unsophisticated consumer. Wallace, 683 F.3d at 326–27. The parties disagree as to whether the materiality requirement applies to each of § 1692e's subsections. The Plaintiffs insist that the materiality standard only applies to § 1692e(10), the statute's catch-all provision. In their view, the conduct prohibited in the remaining § 1692e subsections is a *per se* violation of the FDCPA. In contrast, the Defendants argue that the materiality standard applies to all of § 1692e's subsections.

The Defendants have the better argument in light of Sixth Circuit precedent. In Miller, the Sixth Circuit rejected the plaintiff's claims under § 1692e(2), § 1692e(10), and § 1692e(12) on materiality grounds. 561 F.3d at 596. The court stated:

> Writing for the Seventh Circuit, Judge Easterbrook recently observed that "[m]ateriality is an ordinary element of any federal claim based on a false or misleading statement." Seeing no "reason why materiality should not equally be required in an action based on § 1692e," Judge Easterbrook found a statement "false in some technical sense" immaterial. "A statement cannot mislead unless it is material, so a false but non-material statement is not actionable." We agree.

Id. (internal citations omitted). The court reiterated its commitment to the materiality standard in Wallace, asserting that, in applying the least sophisticated consumer standard, "a statement must be *materially* false or misleading to violate Section 1692e." 83 F.3d at 326. Continuing, the court

14

observed that "[t]he materiality standard simply means that in addition to being technically false, a statement would tend to mislead or confuse the reasonable unsophisticated consumer." Id. at 326–27. Characterizing the plaintiff's claims as arising under § 1692e(2) and § 1692e(10), id. at 324 n.1, the court found that "a clearly false representation of the creditor's name" might satisfy this standard, id. at 327.

In the Court's view, these Sixth Circuit decisions control its analysis here. Both the Miller and Wallace courts applied the materiality standard to claims under multiple subsections of § 1692e. Neither decision limited the application of the materiality standard to 1692e's general prohibition on the "use any false, deceptive, or misleading representation or means in connection with the collection of any debt" or § 1692e(10)'s catch-all provision, which prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." Therefore, the Court will apply the materiality standard to the Plaintiffs' claims in this case.

Here, the collection letters include the OAG's letterhead prominently in the header. Defendant Jones's letter to Plaintiff Gillie states, "Dear Sir/Madam, You have chosen to ignore repeated attempts to resolving [sic] the referenced . . . medical claim. If you cannot make immediate full payment call Denise Hall at Eric. A Jones, L.L.C., . . . at my office to make arrangements to pay this debt." Def. Jones's Letter, doc. 48-2. Defendant Sarah Sheriff's letter to Plaintiff Meadow states, "Sir/Madam: Per your request, this is a letter with the current balance owed for your University of Akron loan that has been placed with the Ohio Attorney General. Feel free to contact me . . . should you have any further questions." Def. Sheriff's Letter, doc. 48-4. Both letters explain that they are communications from a debt collector and that the letters are an attempt to collect a debt. The letters are signed by special counsel in their individual

15

Case: 2:13-cv-00212-JLG-EPD Doc #: 72 Filed: 08/12/14 Page: 16 of 20 PAGEID #: 1244

capacity and identify themselves as "Special Counsel to the Attorney General for the State of Ohio" or "Outside Counsel for the Attorney General's Office." The letters include the names and addresses of the Defendants' law firms.[5]

When "read in [their] entirety, carefully, and with some elementary level of understanding," Miller, 561 F.3d at 595, the Court finds that the least sophisticated consumer would not be materially misled by the Defendants' letters in this case. In sending these letters, special counsel act as representatives of the State of Ohio appointed by the OAG to collect debts owed to the State. O.R.C. § 109.08 (the OAG appoints special counsel pursuant to statute "to represent the state in connection with all claims of whatsoever nature which are certified to the attorney general for collection under any law or which the attorney general is authorized to collect"). The letters accurately reflect this relationship.

Defendant Sarah Sheriff's letter to Plaintiff Meadows requires additional analysis. During the relevant time period, pursuant to a 2008 agreed judgment, Plaintiff Meadows made monthly payments to the Wiles Law Firm for a debt she owed to the State Ohio. M. Sheriff Aff. at ¶¶ 4–5, doc. 60-2. In 2012, Plaintiff Meadows contacted Defendant Sarah Sheriff at the Wiles Law Firm and asked for her remaining balance as to that debt. S. Sheriff Aff. at ¶ 9, doc. 60-1. Defendant Sarah Sheriff sent the letter at issue in this case in response to Plaintiff Meadows' request. Id. at ¶¶ 9–10. In her letter, Defendant Sarah Sheriff informed Plaintiff Meadows of the then current balance of Plaintiff Meadows' debt and signed her name above a signature block listing her title

---

[5] The name and address of Defendant Jones's law firm is not included in the signature block of his letter. See Def. Jones's Letter. Instead, it is listed as the return address on the payment ticket at the bottom of the letter. Id. Defendant Sarah Sheriff provides the name and address of her firm in the signature block of her letter. See Def. Sheriff's Letter, doc. 48-4. The Court concludes that special counsel's inclusion of the names of their law firms in the letters in question was not materially misleading. The letters accurately described special counsel's place of employment and provided a physical location at which special counsel could be contacted.

as "Special Counsel to the Attorney General for the State of Ohio." Def. Sheriff's Letter, doc. 48-4. It is undisputed that Defendant Sarah Sheriff was not appointed special counsel by the OAG. It is also undisputed that the letter's contents were otherwise accurate and responsive to Plaintiff Meadows' request. When viewed objectively in this context, Defendant Sarah Sheriff's signature with the title of special counsel is not materially misleading. The least sophisticated consumer in Plaintiff Meadows' position could not be confused as to the source of Defendant Sarah Sheriff's letter because Plaintiff Meadows contacted the Defendants and requested the information provided in the letter. Defendant Sarah Sheriff is therefore entitled to summary judgment.

The Plaintiffs place great weight on special counsel's use of the OAG letterhead. In their view, the letterhead misleads consumers as to the source of the letters in this case.[6] But this argument ignores special counsel's statutory and contractual relationship with the OAG. Whether special counsel or the OAG are the source of the letters, special counsel act on behalf of the OAG to collect debts owed to the State. Any initial confusion that the least sophisticated

---

[6] The FDCPA prohibits "[t]he use or distribution of any written communication . . . which creates a false impression as to its source, authorization, or approval." 15 U.S.C. § 1692e(9). "Courts have generally limited the application of § 1692e(9) to egregious situations where the debt collector overtly impersonates a government agency or where it attempts to hide its identity by using a false alias." Sullivan v. Credit Control Servs., Inc., 745 F. Supp. 2d 2, 10 (D. Mass. 2010). See also Buckalew v. Suttel & Hammer, P.S., No. CV–10–3002–LRS, 2010 WL 3944477, at *2 (E.D. Wash. Oct.7, 2010) (same). Given the official relationship between the OAG and special counsel, the letters here do not indicate that special counsel were overtly impersonating the OAG or attempting to hide their identity.

The FDCPA also prohibits debt collectors from using "any business, company, or organization name other than the true name of the debt collector's business, company, or organization" in a debt collection communication. 15 U.S.C. § 1692e(14). The Plaintiffs insist that special counsel violated this subsection by using the OAG's name in their communications to debtors. "The aim of § 1692e(14) is to prevent debt collectors from using a name other than [their] own in an attempt to mislead or deceive a consumer." Weinstein v. Fink, No. 99 C 7222, 2001 WL 185194, *5 (N.D. Ill. Feb. 26, 2001). Although the Plaintiffs may be correct that the OAG's name is not special counsel's "true name," it is unclear to the Court how the inclusion of the OAG's name is materially misleading in light of special counsel's identification of their relationship with the OAG. "[T]he cases in which a violation of § 1692e(14) have been found typically involve a debt collector misrepresenting its identity, such as by purporting to be the creditor when it is not, purporting to be a government agency when it is not, or purporting to be distinct from the creditor when it is not." Mahan v. Retrieval–Masters Credit Bureau, Inc., 777 F. Supp. 2d 1293, 1300 (S.D. Ala. 2011). In the Court's view, this case does not involve such conduct on the part of special counsel.

consumer might experience upon seeing the OAG's name and letterhead is dispelled by special counsel's signature in which they identify themselves and their relationship to the OAG.

Because the letters in this case are not subject to "more than one reasonable interpretation," Kistner, 518 F.3d at 441, the Court concludes as a matter of law that the Defendants did not violate 15 U.S.C. § 1692e in this case. The Defendants are therefore entitled to summary judgment.


## IV.    Request for Declaratory Judgment

With his Answer (doc. 24), the OAG filed a counterclaim against the Plaintiffs, seeking a declaration that: (1) special counsel's use of the OAG letterhead does not violate any provision of the FDCPA and (2) the OAG and State of Ohio are immune from liability under the FDCPA. The Plaintiffs filed a Motion to Dismiss the OAG's Counterclaim (doc. 41) on December 20, 2013. The OAG filed a Motion for Judgment on the Pleadings (doc. 46) concerning its counterclaim on February 3, 2014. The Court converted the OAG's Motion to a motion for summary judgment, (doc. 69), and the OAG filed his Motion for Summary Judgment (doc. 70) on May 7, 2014 accordingly.

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The Supreme Court has "repeatedly characterized the Declaratory Judgment Act as 'an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant.'" Wilton v. Seven Falls Co., 515 U.S. 277, 287 (1995) (quoting Public Serv. Comm'n of Utah v. Wycoff Co., 344 U.S.

237, 241 (1952)). The general considerations for determining whether to exercise jurisdiction in a declaratory judgment action are whether the judgment "will serve a useful purpose in clarifying and settling the legal relationships in issue" and whether it "will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." <u>Grand Trunk Western R.R. v. Consolidated Rail Corp.</u>, 746 F.2d 323, 326 (6th Cir. 1984). The court in <u>Grand Trunk</u> set forth the following factors to be considered when applying these principles:

> (1) whether the declaratory action would settle the controversy;
>
> (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;
>
> (3) whether the declaratory action is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;"
>
> (4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and
>
> (5) whether there is an alternative remedy which is better and more effective.

<u>Id</u>.

The Court declines to exercise its jurisdiction over the OAG's declaratory judgment request here. With respect to the OAG's request that the Court declare that special counsel's use of the OAG letterhead does not violate the FDCPA,[7] the Court believes that the parties' motions for summary judgment are better and more effective vehicles for "clarifying and settling the legal relationships in issue" and "afford[ing] relief from the . . . controversy giving rise to the [instant]

---

[7] With respect to the OAG's request that the Court declare the State of Ohio and the OAG immune from liability under the FDCPA, the Court notes that multiple courts have found that the FDCPA does not contain an express and unequivocal waiver of sovereign immunity. <u>Wagstaff v. United States Dep't of Educ.</u>, 509 F.3d 661, 664 (5th Cir. 2007); <u>Ha v. United States Dep't of Educ.</u>, 680 F. Supp. 2d 45, 47 (D.D.C. 2010); <u>United States v. Errigo</u>, No. 08–CV–12506, 2009 WL 127863, at *2 (E.D. Mich. Jan. 20, 2009); <u>Little v. Tenn. Student Assistance Corp.</u>, 537 F. Supp. 2d 942, 944 (W.D. Tenn. 2008) (Donald. J.); <u>Sorrell v. Ill. Student Assistance Comm'n</u>, 314 F. Supp. 2d 813, 817 (C.D. Ill. 2004). This supports the OAG's position that the State of Ohio and the OAG is immune from liability under the FDCPA.

19

proceeding," <u>Grand Trunk Western R.R.</u>, 746 F.2d at 326. In ruling on the parties' motions for summary judgment, the Court was able to address (1) whether special counsel were "debt collectors" under the FDCPA and (2) whether the specific letters sent by special counsel violated the FDCPA. A ruling on the OAG's declaratory judgment request is unnecessary given the Court's holdings as to these issues.

**V.      Conclusion**

For the foregoing reasons, the Court: GRANTS the Defendants' Motions for Summary Judgment (docs. 47 & 51); DENIES the Plaintiffs' Motions for Summary Judgment (docs. 48–50); DENIES the OAG's Motion for Judgment on the Pleadings (doc. 46) and Motion for Summary Judgment (doc. 70); and DENIES AS MOOT the Plaintiff's Motion to Dismiss for Failure to State a Claim (doc. 41).

IT IS SO ORDERED.

S/ James L Graham

James L. Graham
UNITED STATES DISTRICT JUDGE

DATE: August 12, 2014